Filed 5/13/16  P. v. Papp CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>FRANK STEVEN PAPP,<br><br>    Defendant and Appellant. | F069024<br><br>(Super. Ct. No. MCR01460)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Madera County.  James E. Oakley, Judge.

Rachel Lederman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Paul E. O'Connor, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Kane, Acting P.J., Franson, J. and Peña, J.

As a result of his false belief that a friend laced his marijuana with acid, appellant Frank Steven Papp tried to strangle the friend with a rope. Appellant was charged with assault with a deadly weapon, not a firearm, in violation of Penal Code section 245, subdivision (a)(1) and, in 1999, he was found not guilty by reason of insanity (NGI).[1] Appellant was committed to a state mental hospital pursuant to section 1026 and, after serving his maximum term of commitment, the People successfully sought extensions of his commitment in accordance with section 1026.5, subdivision (b)(1).

In February 2014, the People's petition for another extension of appellant's commitment was tried before a jury, and this appeal was taken from the March 13, 2014, order extending appellant's commitment to Napa State Hospital for two years. (§ 1026.5, subd. (b)(1).) Appellant argues the two-year extension of his term is not supported by substantial evidence with respect to his representing "'a substantial danger of physical harm to others'" and having "serious difficulty controlling his dangerous behavior." (*People v. Williams* (2015) 242 Cal.App.4th 861, 872; § 1026.5, subd. (b)(1); *People v. Sudar* (2007) 158 Cal.App.4th 655, 661–662.)

We find the appeal moot but, notwithstanding that finding, the jury's determination was supported by substantial evidence.

## DISCUSSION

### I.     Appeal of Commitment Order Moot

Pursuant to section 1026.5, subdivision (b)(1), "[a] person may be committed beyond the term prescribed by subdivision (a) only under the procedure set forth in this subdivision and only if the person has been committed under Section 1026 for a felony and by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others." For defendants found NGI, each extension of their

---

[1]     All further statutory references are to the Penal Code.

2.

commitment beyond the maximum term of commitment is two years. (§ 1026.5, subd. (b)(8).)

The commitment order in this case expired on March 13, 2016, and appellant is currently committed under a new order extending the term of his commitment to March 13, 2018. This appeal is therefore moot.[2]

Courts have the discretion to address issues on the merits despite their mootness where the issues are of continuing public importance and are capable of repetition yet evading review. (*People v. Barrett* (2012) 54 Cal.4th 1081, 1092–1093, fn. 7; *People v. Gregerson* (2011) 202 Cal.App.4th 306, 321; *People v. Wilkinson* (2010) 185 Cal.App.4th 543, 547.) In this case, appellant challenges his prior commitment term as unsupported by substantial evidence and were we to agree, we cannot grant him any effective relief given the expiration of that commitment order. Moreover, the narrow issue raised on appeal is specific to the now-expired commitment order and cannot be fairly described as an issue of continuing public importance. (Cf. *People v. Gregerson*, *supra*, at p. 321 [burden of proof, standard of proof, and standard of review for outpatient treatment determinations pursuant to § 2972, subd. (d), were important procedural issues warranting decision despite mootness of mentally disordered offender's appeal]; *Wilkinson*, *supra*, at pp. 547–548 [exercising discretion to address technically moot appeal involving "right to be present at the hearing that could result in a loss of liberty"]; *Litmon v. Superior Court* (2004) 123 Cal.App.4th 1156, 1166 [permissibility of consolidated trial presents an issue of continuing public importance that is capable of repetition yet evading review].) In the absence of grounds supporting the existence of an exception to the mootness doctrine, this appeal must be dismissed.

---

[2] At our request, the parties filed supplemental letter briefs addressing the issue of mootness. (Gov. Code, § 68081.)

## II.     Substantial Evidence Supported Extension of Commitment

Notwithstanding our determination the appeal is moot, however, our review of the record discloses sufficient evidence.

Orders extending commitment under section 1026.5 are reviewed under the substantial evidence test.  (*People v. Williams*, *supra*, 242 Cal.App.4th at p. 872; *People v Bowers* (2006) 145 Cal.App.4th 870, 878–879.)  We examine "the entire record in the light most favorable to the order to determine whether a rational trier of fact could have found the requirements of the statute satisfied beyond a reasonable doubt."  (*People v. Williams*, *supra*, at p. 872; *People v. Bowers*, *supra*, at p. 878.)  We do not reweigh the evidence or reevaluate the credibility of witnesses, and "[i]f the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

A """"civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection""""" (*People v. Sudar*, *supra*, 158 Cal.App.4th at p. 662) and, therefore, due process requires that in addition to proof the person under commitment "represents a substantial danger of physical harm to others" (§ 1026.5, subd. (b)(1)), there must be "'proof that a person under commitment has serious difficulty in controlling dangerous behavior'" (*People v. Bowers*, *supra*, 145 Cal.App.4th at p. 878; *People v. Sudar*, *supra*, at p. 662).  "A single psychiatric opinion that an individual is dangerous because of a mental disorder constitutes substantial evidence to support an extension of the defendant's commitment order under section 1026.5." (*People v Bowers*, *supra*, at p. 879.)  However, "expert medical opinion evidence that is based upon a "'guess, surmise or conjecture, rather than relevant, probative facts, cannot constitute substantial evidence.""" (*In re Anthony C.* (2006) 138 Cal.App.4th 1493, 1504.)

4.

Appellant has a long-standing diagnosis of schizoaffective disorder, bipolar type, coupled with polysubstance dependence.[3] Schizoaffective disorder, bipolar type, is a spectrum diagnosis that includes symptoms of both schizophrenia and bipolar type, a mood disorder. Schizophrenia is a formal thought disorder that affects the way someone thinks and processes information while a diagnosis of bipolar type requires at least one episode of mania, which is characterized by symptoms ranging from racing thoughts, grand beliefs, euphoria, widely fluctuating moods, and lack of sleep for over a week. Psychosis, or a separation from reality, and a manic episode are foundational to a schizoaffective diagnosis. Appellant also has a history of delusional beliefs and auditory and visual hallucinations, which are symptoms of his disorder.

During appellant's commitment proceeding, the People presented the testimony of Dr. Melody Samuelson, a staff psychologist at Napa State Hospital; Perry Rankin, a forensic mental health specialist with Anka Behavioral Health; and Dr. Robert Taylor, a licensed clinical psychologist in private practice. Dr. Samuelson testified appellant's original, foundational delusion was his belief that his friend laced his marijuana with acid, which led to his crime. Appellant experienced breakthrough symptoms of delusion within the past year, as well as some symptoms of mania. Staff at the hospital recognized the symptoms when they surfaced and acted quickly to increase appellant's medication. Prior to those events, however, appellant had wanted his medication reduced.

Dr. Samuelson further testified appellant does not attribute his underlying crime to mental illness, he still holds an active delusion about the original offense, and his insight into his mental illness is low, which impacts medication compliance. Additionally, she testified the risk of danger increases statistically in patients with both schizoaffective disorder, bipolar type, and polysubstance dependence, and appellant specifically is at an

---

[3]    Polysubstance dependence is dependence on at least three substances, none of which is preferred over the other. Appellant's polysubstance dependence history includes use of marijuana, alcohol, cocaine, LSD, and hallucinogens.

increased risk of posing danger due to his conditions.  In Dr. Samuelson's opinion, if not in a supervised setting where medication compliance is ensured, appellant presents a substantial danger of physical harm to others.  With respect to his ability to control his mental illness, Dr. Samuelson testified appellant requires medication and he requires supervision to take his medications.  Outside of the structured hospital setting, he would have difficulty controlling his dangerous behavior given his mental disorder, the necessity of remaining medication compliant, and his low insight into both his mental illness and his need to remain on medication.

Mr. Rankin and Dr. Taylor also testified appellant "represents a substantial danger of physical harm to others" if released.  (§ 1026.5, subd. (b)(1).)  Both discussed appellant's schizoaffective disorder, bipolar type, and his need for medication in a structured environment.  Mr. Rankin testified regarding appellant's poor insight into his illness and unlikelihood he would take his medication outside of a supervised setting while Dr. Taylor testified that appellant was presenting attenuated but active symptoms of his disorder, including mood instability, delusional thinking, and poor insight, and that those factors impact his ability to maintain mental stability and medication compliance in a less structured environment.  Dr. Taylor testified he was significantly concerned that appellant was still showing active symptoms of his mental illness despite being in a structured environment where he was taking his medication and, further, in those with schizophrenic spectrum disorder, polysubstance dependence increases the risk of dangerousness because it can "trigger or fuel psychotic symptoms."

Appellant presented the testimony of Dr. Michael D. Zimmerman, a psychologist in private practice who opined in favor of appellant's release from Napa State Hospital.  However, the opinion of only one expert is sufficient to support an extension of appellant's commitment (*People v. Bowers*, *supra*, 145 Cal.App.4th at p. 879) and, although Dr. Zimmerman testified he did not think appellant posed a threat to others or required continued state hospitalization, he testified that schizoaffective disorder is a

chronic condition and delusions are part of that condition. As a result of appellant's chronic condition, Dr. Zimmerman stated that while appellant could be expected to manage his delusions without hurting people, it was unrealistic to expect him not to have delusions. Additionally, Dr. Zimmerman doubted appellant could manage his schizoaffective disorder in an unstructured environment and, in such a setting, Dr. Zimmerman would expect to see appellant cease taking his medication and his delusions return.

Based on our review of the record, we find appellant's contention that the People's experts relied on speculation based entirely on his original offense in 1999 unpersuasive. Given the testimony presented, there was sufficient evidence from which a reasonable jury could have found appellant, "by reason of a mental disease, defect, or disorder, represents a substantial danger of physical harm to others" (§ 1026.5, subd. (b)(1)), and would have serious difficulty in controlling his dangerous behavior outside of the structured hospital setting (*People v. Williams*, *supra*, 242 Cal.App.4th at p. 875; *People v. Kendrid* (2012) 205 Cal.App.4th 1360, 1370; *People v. Bowers*, *supra*, 145 Cal.App.4th at p. 879; cf. *In re Anthony C.*, *supra*, 138 Cal.App.4th at pp. 1506–1508 [prosecution expert was unprepared and failed to prepare a formal risk assessment and his opinion was "based as much on guesswork, surmise or conjecture as on relevant probative facts"; prosecution also presented no testimony a mental abnormality caused the juvenile offender serious difficulty controlling his behavior]; *In re Howard N.* (2005) 35 Cal.4th 117, 138 [no testimony presented regarding the defendant having serious difficulty controlling his sexually deviant behavior]).

## DISPOSITION

The appeal is dismissed as moot.